UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ELMOE DOZIER,

Plaintiff,

v.

UNKNOWN BROWN et al.,

Defendants.

Case No. 2:25-cv-318

Honorable Maarten Vermaat

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.”).[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff’s *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff’s allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff’s complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following LMF staff: Sergeant Unknown Brown, Warden Unknown Tasson, Prison Counselor Unknown Hill, Assistant Deputy Warden P. Hubble, and Resident Unit Manager Unknown Naeyart. (Compl., ECF No. 1, PageID.2.)

[1] *But see Coleman v. Lab. & Indus. Rev. Comm’n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), “context matters” and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black’s Law Dictionary for the definition of “parties” and not addressing *Murphy Bros*.); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of “the term ‘parties’ solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of ‘parties’ in other contexts”).

In Plaintiff's complaint, he alleges that on October 14, 2025, Defendant Brown came to Plaintiff's unit with "legal mail"[2] for Plaintiff. (*Id.*, PageID.3.) Defendant Brown then questioned Plaintiff about this mail before leaving without giving Plaintiff the mail or any paperwork regarding that mail. (*Id.*) The next day, October 15, 2025, Defendant Brown and two unidentified officers came to Plaintiff's cell, handcuffed Plaintiff, and took him to segregation. (*Id.*) Plaintiff was charged with smuggling. (*Id.*) Plaintiff remained in segregation until October 24, 2025. (*Id.*) A hearing was held before an administrative law judge, who dismissed the smuggling charge against Plaintiff. (*Id.*)

On "several" unidentified "occas[]ions," Plaintiff sent kites to Defendant Tasson about the dismissed smuggling charge and the withholding of Plaintiff's "legal documents." (*Id.*) Plaintiff claims that he needed these documents in order to proceed with his criminal appeal. (*Id.*) Defendant Tasson did not respond to these kites. (*Id.*)

On October 29, 2025, Defendant Hill told Plaintiff that Plaintiff would receive copies of this "legal mail." (*Id.*) Defendant Hill then told Plaintiff that Plaintiff would not receive this mail at all and that Plaintiff was lucky to not be going back to segregation. (*Id.*) Additionally, on unspecified dates, Defendant Hill wrote Plaintiff "made up misconduct[]" tickets. (*Id.*)

Additionally, on several unspecified occasions, Plaintiff sent kites to Defendant Hubble regarding the withholding of Plaintiff's "legal mail." (*Id.*, PageID.4.) Defendant Hubble did not

[2] Plaintiff's complaint refers to this mail as "legal mail," but does not specify the contents of the that mail other than a reference to "affidavits." (Compl., ECF No. 1, PageID.4.) Exhibits attached to Plaintiff's complaint suggest that the mail contained "affidavits from the victims on [Plaintiff's] cold case homicide case." (Prisoner Grievance Form, ECF No. 1-1, PageID.16.) Additionally, although not specified in Plaintiff's complaint, exhibits attached to the complaint indicate that this mail had been sent by Plaintiff himself, possibly to an attorney, and was being returned to sender because of incorrect information on the envelope. (*Id.*; Prisoner Grievance Appeal Form, ECF No. 1-1, PageID.14; Affidavit in Support of Step II Grievance, ECF No. 1-1, PageID.15.)

respond to these kites. (*Id*.) Plaintiff also filed several grievances regarding the time he spent in segregation and the withholding of his "legal mail." (*Id*.) Plaintiff alleges that "the Facility" stated that Plaintiff's "legal mail" was being held "for evidence." (*Id*.)

On November 21, 2025, Defendant Hill "reviewed [Plaintiff] on a mail rejection." (*Id*.) Plaintiff's complaint does not describe the result of Defendant Hill's review. (*See id*.) Defendant Naeyart also "reviewed Plaintiff" on November 24, 2025.[3] (*Id*.) Defendant Naeyart told Plaintiff that he would not receive his "legal documents no matter what," and that Plaintiff would not receive any copies of this mail. (*Id*.) Plaintiff alleges that Defendant Naeyart told Plaintiff that "he didn't care about [Plaintiff's] legal mail." (*Id*.)

Based on the foregoing allegations, Plaintiff raises First Amendment mail interference claims, First and Fourteenth Amendment right to access the court claims, Fourteenth Amendment Procedural Due Process Clause claims regarding the deprivation of his personal property, the handling of his review process, the lack of response to his kites, and the ten days he spent in segregation due to the smuggling misconduct charge, First Amendment retaliation claims, and Eighth Amendment claims regarding the time he spent in segregation. Plaintiff seeks injunctive relief and monetary damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

[3] Plaintiff's complaint does not identify the procedure under which these reviews occurred. (Compl., ECF No. 1, PageID.4.) An exhibit attached to Plaintiff's complaint suggests that at least Defendant Naeyart's "review" was part of an administrative hearing that Plaintiff requested. (Step II Response, ECF No. 1-1, PageID.18.)

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. First Amendment Mail Interference Claims—Defendants Brown and Hill

Plaintiff alleges that Defendant Brown came to Plaintiff's unit on October 14, 2025, with "legal mail" for Plaintiff. (Compl., ECF No. 1, PageID.3.) But instead of giving Plaintiff that mail,

Defendant Brown questioned Plaintiff about the "legal mail" and then left, taking that mail. (*Id.*) Plaintiff was then charged with smuggling, although that charge was later dismissed. (*Id.*) Plaintiff alleges that on October 29, 2025, Defendant Hill told Plaintiff that Plaintiff would get copies of this mail. (*Id.*) Defendant Hill later told Plaintiff that he would not receive his mail or copies of his mail. (*Id.*) The Court construes these allegations as raising a First Amendment interference with mail claim.

"A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). The Sixth Circuit has held that prison regulations governing "legal" mail are subject to a heightened standard than those governing general mail. *See id*. at 873–74 (finding that legal mail is entitled to a heightened level of protection to avoid impinging on a prisoner's legal rights, the attorney-client privilege, and the right to access the courts). The ability of a prisoner "to receive materials of a legal nature" related to his legal rights and concerns itself implicates a fundamental right. *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). Courts have, therefore, extended protections to prisoners' legal mail that do not exist for general mail. For example, although "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security," *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993), "the opening of 'legal mail' should generally be in the inmate's presence." *Kensu*, 87 F.3d at 174 (citing *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974)).

"[W]hat constitutes 'legal mail' is a question of law." *Sallier*, 343 F.3d at 871. The Sixth Circuit Court of Appeals has looked to the definition in the Michigan Administrative Code when considering whether mail sent to or from a prisoner incarcerated with the MDOC is "legal mail."

*See, e.g.*, *Jones v. Caruso*, 569 F.3d 258, 268 (6th Cir. 2009) (noting that the "Michigan Administrative Code defines 'legal mail' as correspondence with courts, attorneys, public officials, the office of the legislative corrections ombudsman, the department of correction's central office staff, and staff of the institution in which the prisoner is incarcerated. See Mich. Admin. Code R. 791.6603(7) (Nov. 15, 2008)"); *Muhammad v. Pitcher*, 35 F.3d 1081, 1083 (6th Cir. 1994) (looking to the Michigan Administrative Code for the definition of "legal mail" in Michigan). Moreover, "the determination of whether mail is considered legal mail depends not only on the nature of the sender, but on the appearance of the mail [as well as] the nature of the contents." *Longmire v. Mich. Dep't of Corr.*, 454 F. Supp. 3d 702, 708 (W.D. Mich. 2020) *aff'd* No. 20-1389, 2021 WL 5352809, at *2 (6th Cir. Jun. 9, 2021) (noting that "the mail must be 'properly and clearly marked as legal materials.'.... [W]hile the envelope states that it is confidential, it was not, as the district court held, 'clearly marked as legal mail,' nor did it have the Commission's name on it or other salient information, such as 'the name and bar number of a licensed attorney'").

Additionally, incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987). And the possibility that incoming mail might introduce contraband into the prison is so obvious that courts have routinely upheld the right of prison officials to inspect incoming mail for contraband despite First Amendment free speech protection. *See, e.g.*, *Wolff*, 418 U.S. at 574–76.

While prisoners have a right to receive mail, "isolated instances of interference with prisoners' mail" do not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson,* No. 98-3866, 2000 WL 1175519, at *2 (6th Cir. Aug. 11, 2000) (citing *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th

Cir. 2010) (citing *Johnson* for the holding that "isolated incidents" of interference with prisoners' rights do not rise to the level of a First Amendment violation); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife. Such a random and isolated incident is insufficient to establish a constitutional violation."). Courts have applied this rule in cases involving alleged interference with legal mail. *Smith v. Goostrey*, No. 23-1025, 2023 WL 50246959, at *3 (6th Cir. Aug. 4, 2023); see *also Theriot v. Taskilea*, No. 2:25-cv-149, 2025 WL 2609471, at *20-21 (W.D. Mich Sept. 10, 2025) (holding that Plaintiff's allegation that he was thwarted from sending mail to an attorney on one occasion did not constitute a constitutional violation).

Here, Plaintiff alleges that he was prevented from receiving his "legal mail" on October 14, 2025, and this denial was reiterated on October 29, 2025. (Compl., ECF No. 1, PageID.3.) Plaintiff does not present a claim regarding improper opening or inspection of this alleged "legal mail," and Plaintiff's allegations do not suggest that Plaintiff's "legal mail" was opened or inspected outside of Plaintiff's presence. (*See* Compl., ECF No. 1, PageID.3–4.) Instead, Plaintiff claims that it was a constitutional violation to withhold this mail. (*Id.*)

As an initial matter, it is unclear from Plaintiff's complaint if the mail at issue is properly characterized as "legal mail." In Plaintiff's complaint, he refers to this mail as "legal mail." (*Id.*) But Plaintiff's complaint does not identify the origin of this mail. (*See id.*) The only factual allegation in Plaintiff's complaint to support the conclusion that this was "legal mail" is the allegation that this mail contained "affidavits" that Plaintiff needed to "proceed with [his] criminal appeal process." (*Id.*)

However, exhibits attached to Plaintiff's complaint provide some additional information regarding this mail. The exhibits indicate that this mail contained "affidavits from the victims on [Plaintiff's] cold case homicide case." (Prisoner Grievance Form, ECF No. 1-1, PageID.16.) These exhibits also suggest that this was mail that Plaintiff had attempted to send from the prison, possibly to an attorney, which was being returned to sender. (*Id.*; Prisoner Grievance Appeal Form, ECF No. 1-1, PageID.14; Affidavit in Support of Step II Grievance, ECF No. 1-1, PageID.15.) To the extent that these exhibits are sufficient to show that this mail is properly considered "legal mail," Plaintiff's allegations are still insufficient to show a violation of the First Amendment as detailed below.

Because this mail was coming into the prison, there is a security interest in ensuring that contraband does not enter the facility. Plaintiff's allegations show that Defendant Brown had brought Plaintiff's "legal mail" to Plaintiff and then questioned Plaintiff about the mail, and Plaintiff does not claim that this "legal mail" was improperly opened or inspected outside of his presence. (*See* Compl., ECF No. 1, PageID.3–4.) Instead, Plaintiff's own allegations show that the mail was withheld from him because he was accused of smuggling, suggesting that prison officials believed that this mail contained contraband. (*Id.*, PageID.3.) Certainly, Plaintiff does not have a constitutional right to receive mail that prison officials believe to contain contraband.

To the extent that this mail was withheld from Plaintiff beyond what was required for security purposes, Plaintiff's allegations still do not show a constitutional violation. Plaintiff alleges one ongoing withholding of a piece of legal mail that continued after he was found not guilty of the smuggling charge. (*Id.*, PageID.3–4.) Plaintiff further alleges that he was told by unidentified individuals that, even after the smuggling charge was dismissed, the mail was being held "for evidence." (*Id.*, PageID.4.) Assuming that Plaintiff's factual allegations are true, the

withholding of one piece of Plaintiff's "legal mail" appears to have been an isolated occurrence and therefore does not rise to the level of a constitutional violation.

Accordingly, for these reasons, the Court will dismiss Plaintiff's First Amendment mail interference claim for failure to state a claim.

### B. First Amendment and Fourteenth Amendment Right to Access the Court Claims—Defendants Brown and Hill

Plaintiff alleges that Defendants Brown and Hill failed to provide Plaintiff with his "legal mail." (Compl., ECF No. 1, PageID.3.) Plaintiff suggests that he needed these "legal documents" so he could "proceed with [his] criminal appeal process." (*Id.*) In addition to the First Amendment mail interference claim discussed in the previous section, the Court construes Plaintiff's allegation that he was denied his "legal mail" as also raising a claim of interference with the right to access the court under the First Amendment and Fourteenth Amendment.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff*, 418 U.S. at 556. In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to nonfrivolous pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d at 996, 1000 (6th Cir. Oct. 16, 1992). In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

The only information in Plaintiff's complaint about the documents themselves is the allegation that they contained "affidavits," as well as the conclusion that it was "legal mail" or "legal documents." (Compl., ECF No. 1, PageID.3, 4.) Additionally, the only information in Plaintiff's complaint regarding an underlying cause of action to which these "legal documents" pertained is that it involved Plaintiff's "criminal appeal process." (*Id*., PageID.3.) Plaintiff's complaint provides no facts regarding the status of his "criminal appeal process," including whether there was an appeal pending at that time, and does not provide any allegations to suggest that the appeal was nonfrivolous. Additionally, Plaintiff's complaint does not explain why he needed these documents in order to "proceed with his criminal appeal process." (Compl., ECF No. 1, PageID.3.) Plaintiff complaint also does not identify the specific impact that the withholding of these "legal documents" had on Plaintiff's appeal or any remedy that was lost as a result of the withholding of this mail. (*Id*.) Therefore, the allegations in Plaintiff's complaint fail to show that his constitutional right to access the courts was violated, i.e., that he suffered an actual injury to nonfrivolous pending or contemplated litigation.[4]

Accordingly, Plaintiff has failed to state a claim of interference with the right to access the courts under the First Amendment and Fourteenth Amendment, and the Court will dismiss those claims.

### C. Fourteenth Amendment Due Process Clause Claims

The Court construes Plaintiff's allegations as raising several claims under the Fourteenth Amendment Due Process Clause.

[4] Plaintiff's complaint includes an exhibit that identifies the documents as "affidavits from the victims on [Plaintiff's] cold case homicide case." (Prisoner Grievance Form, ECF No. 1-1, PageID.16.) This additional information does not rectify the shortcomings in Plaintiff's allegations identified in this section.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

**1. Deprivation of Personal Property Claim**

Plaintiff alleges that he was deprived of his "legal documents." (Compl., ECF No. 1, PageID.3–4.) The Court construes Plaintiff's allegations as raising a Fourteenth Amendment Due Process Clause claim regarding the deprivation of Plaintiff's personal property.

Any due process claim regarding the deprivation of Plaintiff's property is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. See *Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Accordingly, Plaintiff's allegations that he was deprived of his property in violation of the Fourteenth Amendment Procedural Due Process Clause fails to state a claim upon which relief may be granted. The Court will dismiss that claim.

**2. Claims Regarding Review Process—Defendants Hill and Naeyart**

Plaintiff alleges that he was denied due process in the review process conducted by Defendants Hill and Naeyart. (Compl., ECF No. 1, PageID.4.) Plaintiff's complaint does not identify what he filed that was then reviewed by Defendants Hill and Naeyart, but an exhibit attached to Plaintiff's complaint suggests that Plaintiff had requested a hearing regarding the withholding of his mail and that Defendant Naeyart then held a hearing. (Step II Response, ECF No. 1-1, PageID.18.) However, Plaintiff presents no claims about a hearing or hearings that were held for the mail rejection, and there is nothing in the complaint to suggest that Plaintiff did not receive all of the process due to him with regard to the rejection of the mail. *See, e.g.*, *McGlothan v. Aikens*, No. 2:23-cv-126, 2023 WL 5088898, at *5–6 (W.D. Mich. Aug. 9, 2023) (finding that a prisoner who received notice, a hearing, and the opportunity to appeal the rejection of a magazine received due process of law), *aff'd*, 2024 WL 34727 (6th Cir. Jan. 10, 2024).

Furthermore, if Plaintiff intended to claim that Defendants Hill and Naeyart conducted a "review" as part of the grievance process, Plaintiff has not shown that any response, or lack thereof, to his grievances violated the Fourteenth Amendment Procedural Due Process Clause. Various

courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any response from Defendants in this review process did not deprive Plaintiff of due process. Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Accordingly, for all of these reasons, Plaintiff's Fourteenth Amendment Procedural Due Process Clause claims against Defendants Hill and Naeyart will be dismissed for failure to state a claim.

**3. Claims Regarding Responses to Kites—Defendants Tasson and Hubble**

Plaintiff's complaint suggests that he was deprived of due process when he did not receive a response to the kites that he sent to Defendants Tasson and Hubble. (Compl., ECF No. 1, PageID.3, 4.) Like the grievance procedure, the Court has also held that there exists no constitutionally protected due process right in the handling of a kite. *See Williams v. Frank*, No. 1:23-cv-1101, 2024 WL 3579388, at *10 (W.D. Mich. July 29, 2024) ("To the extent Plaintiff takes issue with the handling of his kite and grievance, the courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure.);

*Taylor v. Brege*, No. 1:20-cv-180, 2020 WL 1545553, at *4 (W.D. Mich. Apr. 1, 2020) ("To the extent that Plaintiff alleges that Defendants did not properly handle his kites or grievances, he also fails to state a due process claim."). Because Plaintiff has no liberty interest in receiving a response to a kite, any lack of response from Defendants Tasson or Hubble was not a violation of the Fourteenth Amendment Procedural Due Process Clause.

Accordingly, Plaintiff's Fourteenth Amendment Procedural Due Process Clause claims against Defendants Tasson and Hubble will be dismissed for failure to state a claim.

**4. Segregation Claims—Defendant Brown**

Plaintiff alleges that it was "a violation" to hold Plaintiff in segregation for ten days on a smuggling charge that was ultimately dismissed. (Compl., ECF No. 1, PageID.3, 4.) The Court construes this allegation as raising a Fourteenth Amendment Procedural Due Process Clause claim.[5]

As relevant to this claim, to state a Fourteenth Amendment procedural due process claim, Plaintiff must show that the sanctions he received "inevitably affect[ed] the duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 486–87 (1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. *Id.* at 484; *see Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot

[5] As discussed below, the Court also construes this general allegation as raising an Eighth Amendment conditions of confinement claim.

successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff was placed in segregation for a ten-day period. Plaintiff fails to allege any facts to suggest that this ten-day period in segregation constituted an "atypical and significant hardship." *See, e.g.*, *Sandin*, 515 U.S. at 484; *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). The fact that Plaintiff was ultimately found not guilty of the smuggling charge does not alter this analysis.

Furthermore, because Plaintiff's smuggling charge was dismissed, Plaintiff did not receive any subsequent sanctions for a misconduct conviction. Under these circumstances, Plaintiff necessarily fails to show that he received any sanctions from a misconduct conviction that impacted the duration of his sentence or constituted an "atypical and significant hardship." *Sandin*, 515 U.S. at 486–87. Moreover, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he fails to show that he did not receive all the process due to him. *See generally Wolff v. McDonnell*, 418 U.S. 539 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. That is, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to *prevent* or *prevail* on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is

unconstitutional is the deprivation of such an interest *without due process of law*." (emphasis in original) (citations omitted)).

Accordingly, Plaintiff fails to state a Fourteenth Amendment Procedural Due Process Clause claim against Defendant Brown regarding Plaintiff's placement in segregation.

**D. First Amendment Retaliation Claims**

Plaintiff claims that Defendants Hill and Naeyart retaliated against Plaintiff after Plaintiff took steps to try to obtain his "legal mail." (Compl., ECF No. 1, PageID.3, 4.) Plaintiff alleges that Defendant Hill wrote fictitious misconduct tickets against Plaintiff. (*Id.*, PageID.3.) Plaintiff alleges that Defendant Naeyart "retaliate[ed] against [Plaintiff] with other staffs on this matter with [Plaintiff's] legal documents," suggesting that Defendant Naeyart's denial of Plaintiff's claim following review was retaliatory. (*Id.*, PageID.4.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory

motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)).

**1. Defendant Hill**

Here, Plaintiff does not specifically identify the alleged protected conduct that forms the basis for his retaliation claim against Defendant Hill, but it would appear that it was Plaintiff's attempts to obtain his legal mail. (Compl., ECF No. 1, PageID.3.) The alleged adverse action by Defendant Hill was issuing "made up misconduct[]" tickets to Plaintiff. (*Id.*) The issuance of a misconduct charge can be considered an adverse action. *See Thomas*, 481 F.3d at 441 (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action").

Assuming without deciding that Plaintiff alleged sufficient facts to show he engaged in protected conduct and an adverse action was taken against Plaintiff, Plaintiff does not sufficiently allege that his protected conduct was a substantial or motivating factor in Defendant Hill's issuance of these misconduct tickets. *See Smith*, 250 F.3d at 1037. Instead, Plaintiff merely alleges the ultimate fact of retaliation by alleging that Defendant Hill was "retaliating against" Plaintiff. (Compl., ECF No. 1, PageID.3.) Plaintiff does not identify when Defendant Hill allegedly wrote these fabricated misconduct tickets or identify the specific charges that were issued, and there is no indication in Plaintiff's complaint that they were written close in time to Plaintiff's attempts to receive his mail. (*See id.*) Indeed, Plaintiff alleges no facts about when they were written.

Additionally, Plaintiff concludes that the misconduct tickets were "made up." (*Id.*) But Plaintiff provides no facts regarding these misconduct tickets to suggest that the issuance of these

misconduct tickets was motivated by retaliation and was not due to legitimate violations. (*See id.*) For example, Plaintiff does not allege that Defendant Hill, or anyone else, indicated that these tickets were issued in response to anything other than the violation alleged in the ticket or said anything that would suggest a connection between the tickets and any protected conduct. (*See id.*) The only allegation in Plaintiff's complaint to connect these misconduct tickets to any protected conduct is Plaintiff's conclusion that the misconduct tickets were retaliatory. (*See id.*) Plaintiff's conclusory assertion without supporting facts is insufficient to state a retaliation claim.

Accordingly, Plaintiff has failed to state a claim of First Amendment retaliation against Defendant Hill, and the Court will dismiss that claim.

**2. Defendant Naeyart**

Plaintiff alleges that Defendant Naeyart "reviewed [Plaintiff]" and told Plaintiff that he would not receive his "legal documents." (*Id.*, PageID.4.) Plaintiff then concludes that Defendant Naeyart was "retaliating against [Plaintiff] with other staffs[.]" (*Id.*) Plaintiff does not expressly identify the adverse action forming the basis of this retaliation claim, but the Court construes it as Defendant Naeyart's denial of Plaintiff's claim requesting his mail.

However, Plaintiff's retaliation claim against Defendant Naeyart is entirely conclusory. Plaintiff merely alleges the conclusion that Defendant Naeyart was retaliating against Plaintiff. (Compl., ECF No. 1, PageID.4.) Plaintiff does not allege any facts to show that Defendant Naeyart's denial of Plaintiff's claim was motivated by retaliation and was not based on the merits of Plaintiff's claim. Such conclusory allegations of retaliatory motive, unsupported by material facts, do not state a claim under § 1983. *See Harbin-Bey*, 420 F.3d at 580.

Accordingly, Plaintiff has failed to state a claim of First Amendment retaliation against Defendant Naeyart, and the Court will dismiss that claim.

### E. Eighth Amendment Conditions of Confinement Claim—Defendant Brown

Plaintiff alleges that he spent ten days in segregation after being charged with smuggling, and that the smuggling charge was ultimately dismissed. (Compl., ECF No. 1, PageID.3, 4.) Plaintiff alleges that he was taken to segregation by Defendant Brown and two other unidentified officers. (*Id.*, PageID.3.) Plaintiff claims generally that holding him in segregation for 10 days was a "violation." (*Id.*, PageID.4.) In addition to raising a Fourteenth Amendment Procedural Due Process Clause claim as discussed above, the Court construes these allegations as raising an Eighth Amendment claim.

The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (internal quotations omitted). To state an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.*

Placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey*, 524 F.3d at 795. Although Plaintiff was likely denied certain privileges as a result of his segregation, he does not allege or show that he was denied basic human needs and requirements. Plaintiff's complaint does not include any allegations regarding the conditions while

he was in segregation by which the Court could determine that Plaintiff was denied the basic human needs. (*See* Compl., ECF No. 1, PageID.3, 4.)

Additionally, Plaintiff's complaint alleges that Defendant Brown was one of three individuals who took Plaintiff to segregation. (Compl., ECF No. 1, PageID.3.) It does not allege that Defendant Brown was responsible for charging Plaintiff with smuggling or the decision to send Plaintiff to segregation. Plaintiff also does not allege that Defendant Brown had any participation in the decision to keep Plaintiff in segregation for ten days or had any involvement in Plaintiff's placement in segregation beyond the act of initially escorting Plaintiff to segregation.

Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Brown regarding the conditions of Plaintiff's confinement while in segregation. The Court will dismiss that claim.

## **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated: September 2, 2026

/s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge